CELANESE FIBERS COMPANY, ET AL.

V.

EMILY CATHERINE JOHNSON

Record No. 840598

Decided March 8, 1985, at Richmond

Present: All the Justices

*W. Fain Rutherford (James W. Jennings, Jr.; D. Stan Barnhill; Woods, Rogers, Muse, Walker & Thornton,* on briefs), for appellants.

*John W. L. Craig, II (Jenkins, Quigley & Craig,* on briefs), for appellee.

POFF, J., delivered the opinion of the Court.

We granted this appeal to determine whether a workers' compensation award in favor of the claimant was supported by credible evidence.

On June 27, 1983, Emily Catherine Johnson, an employee of Celanese Fibers Company, suffered an injury to her lower back while lifting a loaded trash container. At the hospital, the injury was diagnosed as "[a]ggravation and acute exacerbation of lumbosacral back pain of long-standing degenerative disc disease." Celanese and its insurance carrier, Northwestern National Insurance Company (collectively, the employer), accepted the injury as compensable and, pursuant to a memorandum of agreement, an award was entered granting Johnson temporary total disability benefits.

Shortly after the accident, Johnson's treating physician, Dr. Erma McGuire, referred her to Dr. John D. Varner, a neurosurgeon who had performed disc surgery on Johnson some 20 years before. Dr. Varner diagnosed her post-injury condition as "lumbosacral strain, degenerative arthritis of lumbar and cervical spines." In a later report, dated August 10, 1983, he said that Johnson "is presently disabled" but that "she can return to work on the 15th of August, 1983."

Dr. Thomas E. Strong, an orthopedic specialist, conducted another examination. In his report, dated August 12, he stated that:

She certainly does have definite degenerative changes in her spine and I would think it would be very difficult for her to bend and lift trash all day at the plant, which she describes to me as her main job requirement. She has been having back trouble for 20 years. I don't know how much the episode that she describes aggravated this. I think this lady

should be considered for a change of job status or retirement due to disability if things cannot be worked out.

At the employer's request, Johnson was then examined by Dr. Kenneth J. Walker. In a handwritten note, dated September 9, Dr. Walker expressed his belief that her pain "is now subjective and chronic" and that while the industrial accident "may have aggravated her chronic disease . . . this aggravation has resolved over the *11 wks* since that time." He suggested that Johnson apply for accident and sickness disability benefits but recommended that workers' compensation benefits be discontinued. Following this examination, Dr. McGuire submitted a report, dated September 26, in which she predicted that Johnson would "be able to Return to Work . . . on or about 10-6-, 1983".

Upon receipt of the medical reports, the employer discontinued compensation payments effective September 8 and asked Johnson to sign an agreed statement of fact acknowledging that she was able to return to work. Upon advice of counsel, Johnson refused to sign and, instead, filed an application for hearing to determine whether the employer had "wrongfully ceased payment . . . without further order of the Commission". The employer responded by filing a change-in-condition application seeking termination of benefits on the ground that the claimant was "able to . . . return to [her] regular employment on 9-9-83."

A deputy commissioner ruled that "the application of the [employer] should be placed on the docket" and set a hearing on that application. Johnson testified that, while she had experienced occasional back pain for more than 20 years, the pain since the accident was different in nature and degree and so disabling that she was unable to perform her pre-injury duties. The deputy commissioner criticized the employer's unilateral termination of payments but, based upon the medical evidence, held that Johnson was able to return to work and terminated benefits effective October 6, 1983. Over one dissent, the full Commission found that "the defendants' evidence does not preponderate in its proof that the claimant is capable of returning to her pre-injury employment", reversed the decision of the deputy commissioner, and entered an award requiring the employer to pay benefits "commencing September 27, 1983 and continuing until conditions justify modification".

On appeal, the employer contends that the record is "devoid of support for the Industrial Commission's finding" and asks us to hold "as a matter of law" that the evidence shows that Johnson was able to return to work. Alternatively, the employer argued at bar that, even if Johnson was not able to return to work, there was no proof of causal connection between her disability and the industrial accident; rather, the employer believes, the evidence shows that the effects of the trauma had "resolved" more than a month before the hearing and that her disability was the result of the natural progression of her degenerative disc disease.

The causal-connection question is not properly before us. The employer's change-in-condition application was based solely on the ground that the claimant was able to return to work. This was the application docketed for hearing, and the question of disability was the only issue considered by the deputy commissioner and adjudicated by the full Commission. *See King's Market* v. *Porter,* 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984). Where, as here, causal connection between an industrial accident and disability has been established by the entry of an award, an employer has a right to apply for termination of benefits upon an allegation that the effects of the injury have fully dissipated and the disability is the result of another cause. The employer made no such allegation in this case.

Addressing the disability question, the employer relies on the reports of Dr. McGuire and Dr. Varner. Both said that Johnson was able to "return to work". But that is not the standard for determining disability. The threshold test of compensability is whether the employee is "able fully to perform the duties of his preinjury employment." *Sky Chefs, Inc.* v. *Rogers,* 222 Va. 800, 805, 284 S.E.2d 605, 607 (1981). Dr. Strong's report focuses upon that test. He believed that "it would be very difficult for [Johnson] to bend and lift trash all day" and recommended "a change of job status or retirement". His opinion was supported by Dr. Walker who concluded that her condition entitled her to benefits under an accident and sickness insurance policy. And Johnson's lay testimony is further evidence in support of the Commission's decision that she was unable to return to her pre-injury employment.

Our review of the disability issue is governed by familiar principles. Factual findings made by the Commission are "conclusive and binding", Code § 65.1-98, and a question raised by conflicting medical opinion is a question of fact. *McCaskey* v. *Patrick*

*Henry Hospital,* 225 Va. 413, 304 S.E.2d 1 (1983). We do not judge the credibility of witnesses or weigh the evidence on appeal. "[I]t is our duty to determine whether credible evidence supports the Commission's finding . . . and, if such evidence exists, to sustain the finding." *Cook* v. *City of Waynesboro,* 225 Va. 23, 31, 300 S.E.2d 746, 750 (1983) (citations omitted). We believe the record before us contains credible evidence in support of the Commission's finding that Johnson was unable to return to work, and we will affirm the award.

*Affirmed.*