**Salem**

CENTRAL VIRGINIA TRAINING CENTER, et al.

v.

ELAINE M. MARTIN

No. 0887-85

Decided April 15, 1986

COUNSEL

Bevin R. Alexander, Jr. (Edmunds & Williams, on brief), for appellants.

Robert E. Evans, for appellee.

OPINION

**COLEMAN, J.**—The sole question presented by this appeal is whether the Industrial Commission erred in holding that the employer could not introduce evidence in support of its change-in-condition application which would have shown that claimant's continued incapacity was due to a totally nonwork related disability. The basis for the Commission's ruling was that the only ground alleged in the application to suspend benefits—that claimant could return to her regular employment—did not put in issue whether the current disability was causally related to the compensable injury, but only whether claimant continued to be incapacitated. We conclude that the Commission did not err in its ruling and affirm its denial of employer's application to suspend benefits.

On October 11, 1984, Elaine Martin (claimant) suffered an injury diagnosed as "syncopal episode probably vasovagal reaction." The employer and its carrier accepted the injury as employment related and reached an agreement to pay compensation to the claimant, which was approved in an award by the Commission.

On December 19, 1984, the employer filed an application to terminate claimant's compensation, alleging a change in condition based upon a report from claimant's attending physician, Dr. Stephen Thompson, wherein he stated that claimant would be able to return to her regular employment on December 16, 1984. Employer's application was on a standardized form of the Industrial Commission, on which the employer merely designated as the ground one of the preprinted reasons on the form—that claimant could "return to . . . regular employment on *12/16/84*." The date was the only portion filled in by the employer. The Attending Physician's Report, filed by Dr. Thompson, also was on a standardized form from the Industrial Commission and specified that claimant could return to regular work on December 16, 1984.

Prior to the deputy commissioner's hearing, the Commission granted leave to depose Dr. Thompson. Dr. Thompson testified that his report that claimant could return to work on December 16 was incorrect due to a clerical error and that he intended to say that claimant could return only to *light* work on December 16, 1984. He further stated that the vasovagal reaction had been short-lived; that claimant had, in fact, reached maximum medical improvement with respect to that injury; but that she continued to be disabled by angina pectoris, a degenerative condition from which she had suffered since 1977.

Despite Dr. Thompson's testimony, the employer proceeded to hearing on its original application, which specified as the only ground for change of condition that claimant could return to work. The employer did not attempt to amend its application to allege, as an additional or alternative ground, that claimant's continued disability was the result of a cause not related to her industrial accident. However, at the review hearing before the full Commission, the employer asserted that Dr. Thompson's testimony proved, as a matter of law, that claimant's current disability was no longer a result of the industrial injury because she had reached her pre-accident condition, and that compensation should be terminated on that basis. The Commission, in refusing to consider the evidence concerning causation, ruled that on the application as filed the only issue was whether the employee was able to return to her pre-injury employment.[1]

In refusing to consider the issue or evidence concerning the causation of claimant's continued incapacity, the Commission opined that although "[t]here may be some merit to the employer's position in this respect, . . . this is not the basis of the employer's change in condition application." Accordingly, the Commission found that the medical evidence failed to prove that the employee was able to return to her regular employment on December 16, 1984, and denied the employer's application to terminate compensation benefits.

---

[1] The Commission did not consider, nor do we, whether the application and facts were sufficient to have modified the award from total to partial incapacity since no selective employment was offered or available within the restrictions placed upon the claimant by Dr. Thompson.

The Commission relied on the recent decision of *Celanese Fibers Co. v. Johnson,* 229 Va. 117, 326 S.E.2d 687 (1985), in refusing to consider whether claimant's current disability was causally related to the industrial accident. We agree that *Celanese* controls and supports the Commission's ruling.

■ In *Celanese* the claimant suffered a compensable injury diagnosed as "[a]ggravation and acute exacerbation of lumbosacral back pain of long-standing degenerative disc disease" for which an award was entered based on a memorandum of agreement. *Id.* at 118, 326 S.E.2d at 688. The employer filed a change-in-condition application seeking termination of benefits on the ground that the claimant was "able to . . . return to [her] regular employment . . . ." *Id.* at 119, 326 S.E.2d at 689. The medical evidence before the Commission was in conflict on the question whether claimant could return to her pre-injury employment. Also, the medical evidence was in conflict on the question whether any continuing incapacity was causally related to the industrial accident, whether the effects of that incident were "resolved" and whether the remaining disability was solely the result of "the natural progression of her degenerative disc disease." *Id.* at 119-20, 326 S.E.2d at 689. The Commission found that the employer failed to prove by a preponderance of the evidence that claimant could return to her pre-injury employment. The Supreme Court held that on appeal it could not consider the employer's alternative assertion that the evidence proved no causal connection between the continuing disability and the industrial accident. The Court found that the employer's change in condition application alleging ability to return to work as its sole ground for termination of benefits challenged only incapacity and did not place causation in issue. The Court in *Celanese* stated:

> The employer's change-in-condition application was based solely on the ground that the claimant was able to return to work. This was the application docketed for hearing, and the question of disability was the only issue considered by the deputy commissioner and adjudicated by the full Commission . . . . Where, as here causal connection between an industrial accident and disability has been established by the entry of an award, an employer has a right to apply for termination of benefits upon an allegation that the effects of the injury have fully dissipated and the disability is the result of

another cause. The employer made no such allegation in this case.

Id. at 120, S.E.2d at 689-90. (citation omitted).

■ Central to the Court's holding in *Celanese* is the distinction between those issues which are raised by an employer's application to terminate benefits based on a change in condition, and those raised in an employee's application seeking reinstatement of benefits. The latter, obviously and necessarily, places in issue both incapacity and causation, while the former may only question disability and does not *necessarily* challenge its cause, depending on the grounds asserted. The Supreme Court has said that a change in "condition" includes the "capacity to work." *King's Market* v. *Porter,* 227 Va. 478, 483, 317 S.E.2d 146, 148 (1984) (citing *Mace* v. *Merchants Delivery,* 221 Va. 401, 405, 270 S.E.2d 717, 719-20 (1980)).

In 1956, following the judicial definition of "change-in-condition" expounded in *Jones Construction Co.* v. *Martin,* 198 Va. 370, 94 S.E.2d 202 (1956), which required proof of a physiological change in the disabling condition, the General Assembly expanded that definition by amending Code § 65.1-8 to include not only a change in physical condition but "any change in the conditions under which compensation was awarded or terminated which would affect the right to, amount of, or duration of compensation." It is clear that under the expanded definition, numerous grounds may be raised by an employer's application to terminate or suspend benefits on change of condition. Thus, specificity of the grounds is both desirable and necessary to effectively administer the Workers' Compensation Act.

In promulgating Rule 13, the Commission has required that an employer's application shall state in writing, under oath, the "ground relied on for relief;" the employee's application, which necessarily will require proof of causation, need only state "the change in condition relied upon." Rule 13 further provides for a preliminary determination by the Commission to suspend, terminate or continue benefits until a hearing can be held. This summary procedure enables the Commission to more efficiently discharge its responsibility by making a *prima facie* determination of the merits of an application. This salutary procedure could not be properly performed unless an employer's application and support-

ing evidence specified the "ground relied upon for relief."

Moreover, the employee's ability to defend depends upon having notice of the grounds asserted by the employer for termination or suspension of benefits. An employer can prevail by establishing one of many grounds to terminate or suspend, while the employee, to prevail, must prove both disability and causation. The procedure proscribed in *Celanese* is significant to both the parties and to the Commission.

The employer could have applied prior to the hearing for termination of benefits on the ground that any continuing disability was the result of another cause. We are not unmindful that the employer based its initial application on the attending physician's unequivocal report that the employee could return to her regular employment and that the employer utilized the form furnished by the Commission to file its claim. Nevertheless, when the attending physician offered an additional explanation of his report concerning incapacity, the employer could have sought leave to amend and assert additional "grounds" which would have raised the issue of whether ongoing incapacity was causally related to the employee's industrial injury. Instead, the employer chose to proceed solely on the incapacity determination. Now, having suffered an adverse decision, the employer will not be heard to complain that the Commission failed to adjudicate an issue that was not before it.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.