COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Lorish and Senior Judge Annunziata
Argued at Alexandria, Virginia


PRINCE WILLIAM COUNTY PUBLIC SCHOOLS AND
  PMA MANAGEMENT CORP.
                                          MEMORANDUM OPINION[*] BY
v.       Record No. 0248-22-4             JUDGE MARY GRACE O'BRIEN
                                               OCTOBER 11, 2022
LORRAINE BROOKS


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Megan Kerwin Clark (Whitt, Del Bueno, Clark, on briefs), for
              appellants.

              (Andrew S. Kasmer, on brief), for appellee.  Appellee submitting on
              brief.


         Prince William County Public Schools and PMA Management Corp. (collectively, "the

employer") appeal a Workers' Compensation Commission decision finding that Lorraine Brooks

("claimant") was temporarily totally disabled from June 4, 2021, through June 9, 2021.[1]  The

employer contends the Commission erred in finding that claimant proved a change in condition

causally related to her prior compensable work accident, as required by Code § 65.2-708(A), and by

applying that statute's two-year limitations period.  For the following reasons, we affirm.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Commission did not award any compensation because the claimed period of disability
did not exceed seven days.  See Code § 65.2-509.

BACKGROUND

"On [an] employer's appeal from the decision of the [C]ommission, we view the evidence in the light most favorable to claimant, the prevailing party below." *Herbert Clements & Sons, Inc. v. Harris*, 52 Va. App. 447, 452 (2008).

On May 9, 2017, claimant, a school bus driver, was injured when her bus was rear-ended in a school parking lot. She injured her neck and back and began treatment at Patient First. The employer later provided an orthopedist who diagnosed cervical, lumbar, and shoulder strains and referred claimant to Dr. Rommaan Ahmad, a physician in the same office. The Commission awarded lifetime medical benefits for all "reasonable, necessary[,] and authorized medical treatment causally related to the workplace injury." Claimant also received a supplemental award for permanent partial disability benefits payable through June 10, 2019.

Claimant was in another car accident in September 2017 unrelated to work. Although she went to the emergency room, she sustained no new injuries. Following that accident, her back and neck pain remained "the same [as] before."

In October 2017, Dr. Ahmad diagnosed a cervical strain and chronic pain from lumbar radiculopathy and cervical stenosis and recommended pain medication and physical therapy. In February 2018, Dr. Ahmad also recommended cervical and lumbar epidural steroid injections, but the injections were cancelled because medical providers could not locate the appropriate veins. When claimant continued to experience pain in her neck, back, arms, and legs, she returned to Dr. Ahmad; in April 2019 and January 2020, Dr. Ahmad again recommended steroid injections, but claimant did not get them because the workers' compensation insurer refused to pay. On August 4, 2020, Dr. Ahmad reordered the injections with a note to "get approval for [one] at a time with work comp." Once again, the insurer did not authorize the treatment.

Claimant's physical problems, including pain in her neck and back, worsened. Although her pain level from 2018 to 2020 was "like a four or five," it increased to "[l]ike a six or seven." When asked to pinpoint when her pain had increased, claimant testified that it was "end of April and May" 2021.

Claimant could not get another appointment with Dr. Ahmad, so she returned to Patient First on June 4, 2021, and received a note excusing her from work starting that day, with the stated reason being "injury." The note also referred to a "muscle injury" and a "likely viral infection," and it indicated that claimant could return to "[l]ight activity" on June 6 and "regular activity" on June 12.

On June 7, claimant followed up with her primary care physician, Dr. Reza Golesorkhi, at Potomac Internal Medicine. Dr. Golesorkhi signed a "Return to Work / School" note stating that claimant could not return to work until June 10. Although the note itself did not specify a reason or diagnosis for the work excuse, claimant testified that she and the doctor discussed the pain in her neck and back, and it was her understanding that "[h]e recommended [her] . . . not to go back to work." Claimant also received a referral order from Potomac Internal Medicine on June 7, signed by a physician's assistant, listing a diagnosis of torticollis and referring her to an orthopedist. She did not work from June 4 through June 9 and returned to work on June 10, 2021.

Claimant filed a workers' compensation claim for temporary total disability benefits from June 4 through June 9, 2021, asserting a change in condition causally related to her prior work accident under Code § 65.2-708(A). She also requested authorization for the cervical and lumbar steroid injections, and most of the evidence presented at the hearing on her claims addressed whether she was entitled to that treatment pursuant to her award for lifetime medical benefits. This evidence included a June 2021 deposition of Dr. Ahmad, who concluded that claimant's 2017 work accident aggravated a preexisting degenerative spinal condition and the injections were reasonable

and necessary medical procedures. Dr. Chee-Hahn Hung, to whom claimant had been referred for the injections, concurred with Dr. Ahmad's assessment. The employer procured an independent medical examination from Dr. Donald Hope who opined that claimant's injuries were limited to cervical and lumbar "strains" and had resolved.

After the hearing, a deputy commissioner authorized the injections and also found that claimant established a change in condition and was temporarily totally disabled from June 4 through June 9, 2021. The full Commission unanimously affirmed.

In ruling that claimant proved temporary total disability and that this change in condition was causally related to her prior work accident, the Commission stated as follows:

> At the time the claimant ceased receiving permanent partial disability payments, June 10, 2019, she was capable of full duty work. On June 4, 2021, she was removed from work by Patient First due to her injury. She testified the only incident she suffered since May 9, 2017 was the minor September 17, 2017 auto accident which did not injure her.
>
> The work excuses and the claimant's unrebutted testimony that she was removed from work due to back and neck pain in June 2021 met her burden to prove temporary total disability.

ANALYSIS

Code § 65.2-708(A) provides that "on the ground of a change in condition, the Commission may review any award of compensation" and "may make an award ending, diminishing[,] or increasing the compensation previously awarded." When an employee files a change-in-condition application, "two questions arise: (1) has there been a change in the employee's capacity to work; [and] (2) if so, is the change due to a condition causally connected with the injury originally compensated." *King's Mkt. v. Porter*, 227 Va. 478, 483 (1984).

- 4 -

I.  Change in Condition

The employer contends the Commission erred in finding that claimant proved a "change in condition" and inability to work from June 4 through June 9, 2021.

Code § 65.2-101 defines a change in condition as "a change in physical condition of the employee as well as any change in the conditions under which compensation was awarded, suspended, or terminated which would affect the right to, amount of, or duration of compensation." The Supreme Court has recognized that "a change in an attending physician's opinion concerning an employee's ability to resume work meets the criteria" in the statutory definition. *Mace v. Merchs. Delivery Moving & Storage*, 221 Va. 401, 405 (1980). Applying *Mace*, this Court has stated, "It is clear that a 'change in "condition" includes the "capacity to work."'" *AMP, Inc. v. Ruebush*, 10 Va. App. 270, 273 (1990) (quoting *Cent. Va. Training Ctr. v. Martin*, 2 Va. App. 188, 192 (1986)).

Whether a claimant proved a change in condition is a question of fact. *See Starbucks Coffee Co. v. Shy*, 61 Va. App. 229, 238 (2012); *see also Wise Coal & Coke Co. v. Roberts*, 157 Va. 782, 789 (1932) (noting that "the questions of fact" for the Commission to determine included whether "the claimant suffer[ed] a change in condition"). "Decisions of the [C]ommission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." *Starbucks Coffee Co.*, 61 Va. App. at 238 (quoting *Manassas Ice & Fuel Co. v. Farrar*, 13 Va. App. 227, 229 (1991)); *see also* Code § 65.2-706(A). We defer to the Commission's factual findings "even though there is evidence in the record to support a contrary finding." *S.P. Terry Co. v. Rubinos*, 38 Va. App. 624, 632 (2002) (quoting *Morris v. Badger Powhatan/Figgie Int'l, Inc.*, 3 Va. App. 276, 279 (1986)).

In ruling that claimant sustained a compensable change in condition, the Commission found that she was removed from work by Patient First on June 4, 2021, "due to her injury." The

Commission concluded that the medical provider's work excuses, coupled with claimant's unrebutted testimony that she was removed from work due to back and neck pain in June 2021, carried her burden to prove temporary total disability.

The employer contends that claimant's change-in-condition evidence, consisting of three single-page medical records from June 2021 as well as her own testimony, did not offer credible evidence of a compensable incapacity to work.

The employer argues that the Patient First note was not probative because although it mentioned "injury" and "muscle injury" as the reasons for excusing claimant from work starting June 4, 2021, it provided no details of the nature and timing of any injury. The employer contends that claimant was required to present a corresponding treatment note or identify who signed the document. Additionally, the employer faults the Commission for relying on the Patient First note because it also referred to a viral infection and claimant never explained "how that impacted [her] alleged disability." Finally, the employer argues that references to returning to "[l]ight activity" on June 6 and "regular activity" on June 12, without definition of the terms, impermissibly required the Commission to speculate.

Although the words "injury" and "muscle injury" are not precise, other evidence in the record—including claimant's testimony—provides context establishing that the Patient First note was referring to claimant's 2017 work injury. Claimant testified that she went to Patient First after trying to see Dr. Ahmad, who had been treating her work-related injury and pain since 2017. She denied experiencing a new injury since 2017. From this evidence, the Commission could reasonably infer that "injury" referred to the 2017 work injury. Additionally, the note's reference to a viral infection does not negate the fact that the stated reason for excusing her from work was an "injury." Ambiguities about when claimant could return to work, and to what level of work, are not

fatal to her claim; other evidence in the record, including claimant's unrebutted testimony that she did not return to work until June 10, demonstrated the extent and duration of her disability.

Further, contrary to the employer's argument, claimant was not required to corroborate the note with a corresponding treatment record. The Commission, as factfinder, determined the weight to accord the work-excuse note unaccompanied by a treatment record. *See Georgia-Pac. Corp. v. Robinson*, 32 Va. App. 1, 5 (2000) ("The probative weight to be accorded [medical] evidence is for the Commission to decide." (alteration in original) (quoting *C.D.S. Constr. Servs. v. Petrock*, 218 Va. 1064, 1071 (1978))).

The employer also argues that claimant's two medical records from her June 7, 2021 visit to Potomac Internal Medicine "offered no credible evidence of disability." One document, the "Return to Work / School" note signed by her primary care physician, specified that claimant could not return to work until June 10, 2021. The employer discounts the document because it did not specifically mention the 2017 work accident or the reason for the work excuse. The employer asks this Court to view the note in isolation, divorced from other evidence contextualizing it— particularly, claimant's testimony. Claimant explained that she saw her primary care physician as a follow-up to her Patient First visit, they discussed her back and neck pain, and he advised staying home from work until June 10, 2021. In context, the work-excuse note provided credible evidence of claimant's disability.

The employer also challenges the order from Potomac Internal Medicine signed by a physician's assistant referring claimant to an orthopedist for "torticollis," a condition not diagnosed elsewhere in the record. The employer argues that the referral order was ambiguous and addressed a condition unrelated to the work accident.

When the record permits competing inferences, this Court defers to the Commission's assessment of the "probative weight to be accorded [medical] evidence," considering the

Commission's role "to adopt that view 'which is most consistent with reason and justice.'" *Georgia-Pac. Corp.*, 32 Va. App. at 5 (alteration in original) (quoting *C.D.S. Constr. Servs.*, 218 Va. at 1071). Neither the deputy commissioner nor the Commission relied on the referral order in determining that claimant was totally disabled from June 4 through June 9, 2021. The employer asks this Court to reevaluate this evidence and find that it negated the credibility of claimant's other evidence; however, "we do not re-weigh the preponderance of the evidence after the [C]ommission has done so." *Id.* at 9. "Our review is limited to determining whether the record contains credible evidence to support the [C]ommission's findings." *Id.* We defer to the Commission's factual findings supported by credible evidence even where other evidence in the record might support a contrary finding. *See S.P. Terry Co.*, 38 Va. App. at 632.

The employer also contends that claimant offered no credible testimony to support her claim that she was totally disabled from June 4 through June 9, 2021, but only referred vaguely to the onset of increased pain. Again, the employer's contentions misapprehend this Court's standard of review. "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991). Here, the Commission credited claimant's testimony that she was removed from work due to back and neck pain in June 2021, and we are precluded from drawing new inferences from her testimony and reevaluating her credibility on appeal. *See id.*

The record reflects that in May 2021, claimant's physical problems—including pain related to her neck and back—had increased. She denied experiencing a new injury and explained that when her pain increased, she could not get another appointment with Dr. Ahmad and therefore went to Patient First, which took her out of work. In a follow-up appointment with her primary care

doctor, he also took her out of work after they discussed her pain. The work-excuse notes corroborate her testimony and provide the relevant dates.

Taken together, claimant's medical records and testimony provide credible evidence that she was totally disabled from June 4 through June 9, 2021.

## II. Causation

The employer also contends that claimant did not prove a causal connection between the 2017 work injury and the 2021 disability. Similar to its challenge to the sufficiency of the evidence proving the disability, the employer argues that claimant's "self-serving testimony regarding her subjective pain complaints" and the work-excuse notes "unaccompanied by contemporaneous notes" failed to prove causation.

To prevail on a claim under Code § 65.2-708(A), an employee must prove that a change in work capacity is causally connected to the injury originally compensated. *See King's Mkt.*, 227 Va. at 483. The Commission's determination of causation is a finding of fact, which is binding on this Court if supported by credible evidence. *S.P. Terry Co.*, 38 Va. App. at 632.

In *King's Market*, the Supreme Court reversed the reinstatement of disability benefits to an employee whose evidence consisted of a doctor's letter and two work-excuse notes diagnosing degenerative spinal changes and cervical arthritis but failing to relate the condition to the prior work injury. 227 Va. at 482-84. Not only was the record "devoid of evidence establishing a causal connection" to the work injury, *id.* at 484, but the Commission had also misconstrued a Supreme Court case as dispensing with a claimant's requirement to prove causation at all, *id.* at 483. Reaffirming a claimant's evidentiary burden, the Supreme Court stated that "[p]roof of the causal connection between the [work] accident and the disabling condition underlying the employee's application must go beyond the realm of conjecture." *Id.* at 484.

The employer contends that, under *King's Market*, claimant's work-excuse notes could not prove causation without additional medical evidence, such as contemporaneous treatment notes or expert opinions. We disagree. In *King's Market*, the Supreme Court did not reverse the reinstatement of disability benefits because the employee presented work-excuse notes without additional medical evidence; it reversed because the Commission did not require the employee to prove causation. *See id.* at 483-84. In reaffirming a claimant's burden of proof, the Court did not impose a limit on the type of evidence a claimant may present to meet that burden. *See id.*

We have stated that "[c]ausation of a medical condition may be proved by either direct or circumstantial evidence, including medical evidence or 'the testimony of a claimant.'" *Farmington Country Club, Inc. v. Marshall*, 47 Va. App. 15, 26 (2005) (quoting *Dollar Gen. Store v. Cridlin*, 22 Va. App. 171, 176 (1996)). A claimant's testimony may support an award even "when medical evidence on [causation] is inconclusive, indecisive, fragmentary, inconsistent, or even nonexistent." *Cridlin*, 22 Va. App. at 177 (quoting 2B Arthur Larson, *The Law of Workmen's Compensation* § 79.51(a) (1995), *republished as* 12 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 128.02 (2022)).

Here, unlike in *King's Market*, the Commission did find evidence linking claimant's 2017 work accident to her 2021 disability: (1) the work-excuse notes, particularly the Patient First note attributing claimant's incapacity to "injury," and (2) claimant's unrebutted testimony that she was removed from work due to back and neck pain in June 2021 and had experienced no injury-causing incidents other than the 2017 work accident. Although the Patient First note also referred to a viral infection, the note specified "injury" as the reason to remain home from work. Claimant testified that, after Patient First, she went to Potomac Internal Medicine to follow up with her primary care physician. From this evidence, the Commission could reasonably conclude, without conjecture or speculation, that Potomac Internal Medicine excused claimant from work for the same reason

- 10 -

Patient First did—an injury causally related to the 2017 work accident. *See King's Mkt.*, 227 Va. at 484. Further, in addition to the work-excuse notes, the Commission was free to credit claimant's testimony that her 2021 incapacity was causally connected to her 2017 compensable accident. *See Cridlin*, 22 Va. App. at 176-77.

We note that the Commission's decision to authorize the steroid injections rested on proof of a causal link between claimant's 2017 work accident and her 2021 condition. Claimant's evidence included two doctors' opinions that her 2017 work accident aggravated a preexisting degenerative spinal condition and directly attributing the medical necessity of the injections to that accident. The Commission agreed, and the employer did not appeal that ruling. The evidence supporting the injection authorization, and claimant's need to visit Patient First and Potomac Internal Medicine while awaiting the injection authorization, add to the credible evidence in the record showing a causal link between the 2017 work accident and the 2021 incapacity.

Therefore, because credible evidence in the record supports the Commission's factual finding of causation, we will not disturb it on appeal. *See S.P. Terry Co.*, 38 Va. App. at 632.

### III. Statute of Limitations

The employer contends that the Commission erred in applying a two-year statute of limitations to claimant's temporary total disability claim, pursuant to Code § 65.2-708(A). The statute provides that a claimant pursuing benefits based on a change in condition has "24 months from the last day for which compensation was paid[] pursuant to an award under this title." Code § 65.2-708(A); *see Armstrong Furniture v. Elder*, 4 Va. App. 238, 241 (1987) (applying former Code § 65.1-99, now Code § 65.2-708).

By contrast, if there is no change in condition, a one-year limitation period governs a claim for additional benefits. *See* Code § 65.2-501. This statute applies "to filing an application for additional workers' compensation benefits in a situation when the disability is at the same level both

when the award begins and ends." *Armstrong Furniture,* 4 Va. App. at 244 (construing former Code § 65.1-56, now Code § 65.2-501). Code § 65.2-501 specifies that a claimant is required to "file an application" for benefits "within one year from the date compensation was last due." *See also Va. Int'l Terminals, Inc. v. Moore*, 22 Va. App. 396, 402 (1996).

Because the Commission found that claimant proved a change in condition, it correctly applied the two-year limitations period in Code § 65.2-708(A). June 10, 2019, was the last date permanent partial disability benefits were paid to claimant pursuant to the prior award. The Commission found that she experienced a change in condition as of June 4, 2021, which was within twenty-four months from the day that the last compensation was paid. *See* Code § 65.2-708(A). Accordingly, the Commission properly exercised its jurisdiction to adjudicate the claim.

CONCLUSION

For these reasons, the Court affirms the ruling of the Commission.

*Affirmed.*