COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Petty and Senior Judge Clements
Argued at Alexandria, Virginia

MELISSA ANTOINETTE JONES

                                                                OPINION BY
v.         Record No. 0309-09-4                   JUDGE D. ARTHUR KELSEY
                                                                NOVEMBER 24, 2009
U.S. SENATE FEDERAL CREDIT UNION AND
  CUMIS INSURANCE SOCIETY, INC

                FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                W. David Falcon, Jr. (Chasen & Boscolo, P.C., on brief), for
                appellant.

                John C. Duncan, III (Duncan and Hopkins, P.C., on brief), for
                appellees.

        In 1997, Melissa Antoinette Jones filed a workers' compensation claim and shortly

thereafter settled the claim.  Her original claim letter alleged various injuries, including injury to

her left side and knee.  The Memorandum of Agreement, however, narrowed the scope of her

injuries and conspicuously excluded any mention of any left knee injury.

        Eleven years later, Jones sought an additional award for an injury to her left knee caused

by the 1997 accident.  The Workers' Compensation Commission held Jones abandoned her left

knee claim.  Refusing to "adjudicate cases piecemeal," the commission held that issues "raised

and not pursued or determined by hearing or formal agreement are abandoned unless specifically

deferred."  On appeal, Jones argues the commission erred as a matter of law.  We disagree and

affirm.

                                                    I.

        In 1997, Jones fell off a chair at work.  Represented by counsel, Jones filed a claim

alleging injuries to her "neck, back, left side, knee, head, arm and shoulder."  The claim letter

requested a hearing "seeking an adjudication of her entitlement to all benefits including

temporary total, temporary partial, permanent partial disability and medical arising out of the industrial accident which occurred on or about 4-30-97." Before scheduling the hearing, the commission asked Jones to clarify the specific relief she requested. Counsel for Jones restated the claim as a request for temporary total benefits as well as permanent loss benefits under Code § 65.2-503.

Later, in October 1997, the commission was informed that the parties had resolved the dispute. The commission entered an order stating that because "the parties have resolved the matter in controversy by Memorandum of Agreement . . . the scheduled hearing is cancelled contingent upon the executed agreement being submitted" to the commission within thirty days.

With advice of counsel, Jones entered into a Memorandum of Agreement using a form provided by the commission. The instructions for the form advised Jones to "be sure to . . . indicate all parts of the body affected in the 'Nature of Injury' box." In that box, entitled "Nature of injury or illness, including parts of body affected," the Memorandum of Agreement identified Jones's injuries as "Cervical and dorsal strains; left arm and hand injury." Jones signed the agreement which included a certification "that the facts relating to this accident are correct as presented on this form . . . ."

The agreed-upon compensation award included a period of temporary total benefits and, by a Supplemental Memorandum of Agreement executed the same day, temporary partial benefits. The instructions accompanying the Supplemental Memorandum of Agreement advised that it was to be used "whenever additional periods of compensation occur for an accident or illness for which an initial Memorandum of Agreement has already been submitted." In January 1998, the commission entered an "Award Order" approving the settlement and directing the employer to pay Jones temporary (total and partial) benefits and lifetime medical benefits for the claimed injuries.

In April 1998, Jones requested a change-in-condition hearing seeking additional temporary total and partial benefits. The employer contested the request as medically unsupportable. To avoid further litigation, however, the parties submitted another Supplemental Memorandum of Agreement authorizing additional temporary total benefits. This form, like the earlier one, made clear it applied only to "additional periods of compensation" for an "accident or illness for which an initial Memorandum of Agreement has already been submitted." The commission entered another order approving the supplemental agreement and awarding the agreed-upon benefits.

About ten years later, in 2008, Jones filed a new claim — based upon the same 1997 worksite accident — seeking a permanent loss award for, among other things, an injury to her left knee. The commission denied the 2008 claim as untimely under the two-year statute of limitations set forth in Code § 65.2-601. The commission also ruled the 1997 claim alleging a knee injury, while timely, had been settled by a Memorandum of Agreement that narrowed the scope of the initial contested claim. "We conclude," the commission found, "that the claimant abandoned her original claim for a knee injury by executing MOAs that did not list the left knee."

II.

Following a long line of its own precedent, the commission in this case explained: "We frequently have held that the Commission does not adjudicate cases piecemeal. Issues raised and not pursued or determined by hearing or formal agreement are abandoned unless specifically deferred."[1] On appeal, Jones does not challenge the commission's restatement of the

---

[1] See Swain v. City of Petersburg Soc. Servs., 2007 Va. Wrk. Comp. LEXIS 563, at *11 (Sept. 4, 2007); Thomas v. Washington Metro. Area Transit Auth., 2006 Va. Wrk. Comp. LEXIS 923, at *11-12 (Oct. 20, 2006); Locke v. Southeastern Container Co., 2006 Va. Wrk. Comp. LEXIS 164, at *13 (Mar. 14, 2006); Moore v. Ross Store, Inc., 2004 Va. Wrk. Comp. LEXIS 612, at *4 (Sept. 30, 2004); Sutherland v. Craft Mach. Works, Inc., 2004 Va. Wrk. Comp. LEXIS 249,

abandonment doctrine or seek to overturn it. Instead, Jones contends the commission's application of the doctrine to her left knee injury was "unsupported by the evidence and should be reversed." Appellant's Br. at 4. She raises several reasons why this is so.

First, Jones argues the 1997 Memorandum of Agreement did not need to list the injury to the left knee because the settlement "resolved only part" of her claim. Id. The commission disagreed with this reasoning, as do we. The Memorandum of Agreement required Jones to "indicate *all* parts of the body" injured as a result of the accident. (Emphasis added.) Nothing in the agreement implied Jones was free to list some, but not all, of her claimed injuries. Nor can Jones reasonably contend she had not previously raised the permanent loss issue related to her left knee. Prior to signing the agreement, Jones claimed her injuries included her left side and knee. Both her original claim and her clarification letter sought an award for permanent loss benefits. In this context, the commission understandably concluded the settlement "resolved the matter in controversy" and cancelled the evidentiary hearing previously scheduled to resolve all contested issues. Jones points to nothing in the record suggesting she specifically deferred the left knee permanency claim for adjudication ten years later.

Second, Jones asserts that the commission failed to take into account the 1998 change-of-condition application and various medical records mentioning treatment for her left knee *after* the 1997 Memorandum of Agreement. We again disagree. Whatever the legal relevance of the 1998 application to the abandonment issue, the commission correctly pointed out that the 1998 application requested only temporary wage (not permanent loss) benefits. The application did not attempt to expand upon the description of Jones's injuries which the parties agreed to in the 1997 Memorandum of Agreement.

at *5 (May 28, 2004); Sparks v. Food Lion, LLC/Delhaize Am., Inc., 2003 Va. Wrk. Comp. LEXIS 871, at *19 (May 2, 2003); Gross v. Wyeth-Ayerst Labs., 2000 Va. Wrk. Comp. LEXIS 503, at *11 (Apr. 11, 2000), aff'd, No. 1081-00-2 (Va. Ct. App. Oct. 10, 2000) (unpublished).

As for the post-1997 medical reports, the commission acknowledged that some "contain several references to the claimant's left knee." But the content and context of these references, the commission nonetheless found, were "simply too vague to constitute the filing of a claim for the claimant's left knee" and addressed "a multitude of conditions that may or may not be related" to Jones's 1997 accident. Because the record supports the commission's factual findings on this issue, <u>see</u> Code § 65.2-706(A), we have no authority to set them aside.[2]

Finally, Jones contends the commission's ruling is inconsistent with <u>Boxley v. Onorato</u>, 218 Va. 931, 243 S.E.2d 201 (1978). We do not see the conflict. <u>Boxley</u> did not address, much less reject, the commission's abandonment doctrine. Instead, in <u>Boxley</u>, the parties agreed to a description of the injuries in a memorandum of agreement. Within the statutory limitations period, they *expanded* the agreed-upon scope of injuries by executing a supplemental agreement specifically incorporating by reference medical reports providing a more expansive description of the injuries. We face the inverse scenario. Jones filed a timely claim that *included* her left knee. Her later memorandum agreement *narrowed* the scope of the injuries. And her supplemental agreements neither expanded nor contracted the scope of injuries. Jones abandoned a claim for an injury she had previously filed, while the claimant in <u>Boxley</u> timely supplemented a claim for an injury she had not previously claimed.

In sum, we find no error in the commission's application of the abandonment doctrine to this case. As the commission rightly observed, it cannot administer a complex adjudicatory system in a piecemeal fashion. When parties advise the commission prior to an evidentiary

---

[2] The commission added an alternative reason for rejecting Jones's argument: "Moreover, these medical reports were submitted before the parties submitted the second MOA. Thus, to the extent that these records could constitute a claim, it was abandoned by the filing of the second MOA." Because the commission's finding that the medical records do not fairly apprise the employer of a new claim, we need not address whether, even if they did, the Supplemental Memorandum of Agreement (by failing to expressly make the claim) likewise constituted an abandonment of the putative claim.

hearing that a disputed claim has been settled and an agreement reached, the commission should be able to rely on that agreement to define the agreed-upon scope of the claim and to set the boundaries for a consent award.

III.

Finding no error in the commission's application of the abandonment doctrine to the facts of this case, we affirm.

<u>Affirmed.</u>